**Carl H. LUNDERSTADT, John E. Scott and Bradford C. Bernardo, Appellants,**

v.

**Nicholas A. COLAFELLA, individually and as Chairman of the Select Committee to Investigate Compliance with the Steel Products Procurement Act, Reizdan B. Moore, Esquire, individually and as Counsel to the Select Committee to Investigate Compliance with the Steel Products Procurement Act, and Stanley R. Gochenour, Jr., individually and as Investigator for the Select Committee to Investigate Compliance with the Steel Products Procurement Act.**

No. 89–3159.

United States Court of Appeals, Third Circuit.

Argued Aug. 8, 1989.

Decided Sept. 11, 1989.

As Amended Sept. 15, 1989.

Rehearing and Rehearing In Banc Denied Oct. 17, 1989.

Paul M. Titus (argued), Patrick M. Livingston, Mansmann Cindrich & Titus, Charles F. Scarlata, Scarlata & Plastino, Pittsburgh, Pa., for appellants, Carl H. Lunderstadt and John E. Scott.

John B. Harwood, MacKinnon & Harwood, Providence, R.I., for appellant, Bradford C. Bernardo.

W. Thomas McGough, Jr., Richard H. Glanton, Gregory B. Jordan (argued), Reed Smith Shaw & McClay, Pittsburgh, Pa., for appellees, Nicholas A. Colafella, Reizdan B. Moore and Stanley Gouchenour, Jr.

Before SLOVITER and GREENBERG, Circuit Judges, and FISHER, District Judge [*]

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Before us is an appeal by plaintiffs, who were subcontractors on a state construction project, from summary judgment en-

[*] Hon. Clarkson S. Fisher, United States District Court for the District of New Jersey, sitting by designation.

tered against them in their suit against a state legislator, the counsel to a state legislative committee, and the investigator for the committee. Plaintiffs' complaint asserted claims under 42 U.S.C. § 1983 (1982) and pendent state law claims of defamation and invasion of privacy resulting from statements made by defendants concerning alleged fraud on the construction project. The district court held that plaintiffs' claims were barred on the basis of the statute of limitations and defendants' legislative and testimonial immunity. On appeal plaintiffs contend that the district court erred in granting summary judgment while they had discovery requests outstanding and that the district court erred in ruling that defendants' statements at issue were protected by legislative and testimonial immunity.

## I.

### Background

Plaintiffs Carl Lunderstadt and John Scott were principals of North American Industries, Inc.; plaintiff Bradford Bernardo was a principal in Providence Granite Co., Inc. Pursuant to a contract entered into in 1983, these companies supplied the granite for an addition to the Pennsylvania State Capitol Building in Harrisburg and were among the subcontractors chosen in 1984 to fabricate the granite into finished pieces for use in the project.

In 1985, after an investigation by the Commonwealth's Auditor General into the role played by plaintiffs' companies as middlemen in the Commonwealth's purchases of the raw granite, the Pennsylvania House of Representatives recommissioned a standing Select Committee [1] and directed it to investigate "other matters relating to compliance with State Law in the performance of State construction projects." Pa. H.R.Res. 17, Session of 1985 (April 9, 1985) *reprinted in History of House Bills and*

*Resolutions, Sessions of 1985 and 1986* at H–9. The Select Committee was empowered to hire staff, conduct hearings and issue subpoenas during the course of its investigation. *Id.* Defendants Nicholas C. Colafella, a state representative, served as the chairman of the Select Committee, Reizdan B. Moore was counsel to the Committee, and Stanley Gochenour, Jr. served as the Committee's investigator.

Beginning in January 1986, the Select Committee conducted several public hearings concerning the allegations of impropriety in the procurement of granite for the Capitol Addition Project. Scott and Lunderstadt were subpoenaed but invoked their Fifth Amendment rights to refuse to testify. The Committee's work concluded on November 25, 1986 with the presentation of a report.

Plaintiffs, contending that over the course of the life of the Committee defendants were responsible for false, misleading and/or deceptive allegations about them, filed suit on August 4, 1987. Counts I and II alleged that defendants' statements, made under color of state law, deprived them of their liberty and property respectively without due process. Count III included a claim for defamation and Count IV for invasion of privacy. Plaintiffs asked for compensatory and punitive damages.

Defendants filed a motion under Rule 12(e) for a more definite statement on September 30, 1987 which the district court granted on March 1, 1988. Defendants had argued that the allegations of the complaint were insufficiently specific to allow them to determine the circumstances under which the communications took place and to interpose potential affirmative defenses. Plaintiffs filed their amended complaint on March 16, 1988 and defendants answered on April 4, 1988. Defendants' answer as-

---

1. The Select Committee was created in 1984 to investigate compliance with the Steel Products Procurement Act, 73 Pa.Stat.Ann. § 1881 *et seq.* (Purdon Supp.1989), a statute requiring that steel products used in public works in Pennsylvania be manufactured in the United States. The Committee had been charged by the Penn-sylvania House of Representatives "to investigate compliance and the effectiveness of procedures used to determine compliance with the [A]ct." Pa.H.R.Res. 198, Session of 1984 (March 20, 1984) *reprinted in History of House Resolutions, Session of 1984* at H–95.

serted numerous affirmative defenses including failure to state a claim, privilege under the Speech and Debate clause of the Pennsylvania Constitution, common law privileges and immunities, and the statute of limitations.

The parties engaged in limited discovery, which consisted primarily of the plaintiffs' answer to some of defendants' interrogatories. The parties were required to complete discovery by March 17, 1988, and agreed in February to focus their discovery on the facts relating to the immunity issue. App. at 1273. The record does not disclose any discovery completed on plaintiffs' initiative during that period.

Defendants filed their motion for summary judgment on April 25, 1988 raising defenses of the statute of limitations, speech and debate immunity and testimonial immunity. Plaintiffs thereafter moved the district court "pursuant to Rule 56(f) ... to refuse defendants' application for summary judgment or, in the alternative, to order a continuance before ruling on defendants' Motion for Summary Judgment so that plaintiffs may conduct depositions and other discovery in order to present a full record on defendants' summary judgment motion." App. at 1138. No affidavit was filed in support of the motion. On July 7, plaintiffs noticed the deposition of three reporters, the governor's press secretary, and a court reporter. On July 12, 1988, defendants moved for a protective order with respect to these depositions. The district court granted that motion on July 20, 1988 on the ground that the "threshold" immunity question should be resolved first, and denied plaintiffs' motion for continuance of the summary judgment motion because "[p]laintiffs have not submitted the specific affidavits required by Fed.R.Civ.P. 56(f)." App. at 1180.

On December 22, 1988, the district court granted defendants' motion for summary judgment. The court, applying Pennsylvania's one-year statute of limitations applicable to libel, slander or invasion of privacy, held that "[t]he acts specifically alleged to have occurred on January 7, January 13, and in February [of 1986], as well as any general allegations of acts occurring before August 4, 1986 fail to survive the statute of limitations." App. at 1188–89. The court thus granted the defendants' motion for summary judgment as to those allegations. The court specifically stated that the allegations "[r]emaining are the allegations of October 10, October 16 and November 25, 1986, as well as plaintiffs' general 'catch-all' allegations for that time period." *Id.* at 1189. The court then examined the three allegations which remained and ruled that two were protected by the Speech or Debate Clause of the Pennsylvania Constitution, and the remaining one was protected by testimonial immunity. Finally, the court denied plaintiffs' motion under Rule 56(f), ruling that more discovery was unwarranted, that plaintiffs failed to make timely discovery within the period allotted to them for discovery, and that defendants were entitled to summary judgment "as to the general incidents alleged by plaintiffs." App. at 1195.

## II.

### *Jurisdiction*

Cognizant that we must always consider not only the subject matter jurisdiction of this court but the subject matter jurisdiction of the district court as well, *see Trent Realty Associates v. First Fed. Sav. and Loan Ass'n,* 657 F.2d 29, 36 (3d Cir. 1981), we asked the parties to address the issue of federal subject matter jurisdiction over the first two counts. We called the parties' attention to cases holding that injury to reputation, even when financial harm results therefrom, is an insufficient basis on which to predicate a claim under the due process clause, and cited specifically *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and *Sturm v. Clark,* 835 F.2d 1009 (3d Cir.1987). The parties responded by letter to the court's inquiry, in agreement that there were sufficient allegations to invoke federal jurisdiction. After consideration, we agree.

We are guided by the general principle enunciated in *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), that a federal court may dismiss for lack of

**70**

jurisdiction only if the claims are " 'insubstantial on their face.' " *Id.* at 542 n. 10, 94 S.Ct. at 1382 n. 10 (quoting *Engineers v. Chicago, R.I. & P.R. Co.*, 382 U.S. 423, 428, 86 S.Ct. 594, 597, 15 L.Ed.2d 501 (1966)). As we explained in *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir.1987), "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false." The threshold to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion. On review of the allegations of the complaint alleging violation of section 1983, we cannot say that they are so "wholly insubstantial and frivolous", *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776–77, 90 L.Ed. 939 (1946), that the district court should have *sua sponte* dismissed under Fed.R.Civ.P. 12(b)(1). We thus turn to a consideration of the issues raised on this appeal.

### III.
### *Rule 56(f)*

■ We consider first plaintiffs' argument that the district court's grant of summary judgment was error because plaintiffs had outstanding discovery requests and had requested the court, pursuant to Rule 56(f), to stay its disposition of the motion until discovery was completed. In particular, plaintiffs argue that the discovery which they requested could lead to information showing that at least some of defendants' statements were not privileged because they were made at press conferences rather than committee sessions or were otherwise disseminated beyond the protected sphere. It is an argument which, at least on its face, causes us grave concern. In *Sames v. Gable*, 732 F.2d 49, 52 (3d Cir.1984), this court reversed the district court's grant of summary judgment because plaintiffs' discovery requests were

still outstanding. We stated that, "[t]his court has criticized the practice of granting summary judgment motions at a time when pertinent discovery requests remain unanswered by the moving party." *Id.*

■ In its order of July 20, the district court refused to grant plaintiffs a continuance pending discovery because of plaintiffs' failure to submit affidavits, as required by Rule 56(f), identifying their inability to effectively oppose the summary judgment motion. Rule 56(f) specifically provides that the court may order a continuance of a motion for summary judgment "[s]hould it appear *from the affidavits of a party* opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed.R.Civ.P. 56(f) (emphasis added). We have on numerous occasions suggested that a failure to submit affidavits with a Rule 56(f) motion is enough to preclude an argument of the kind made by plaintiffs. *See Dowling v. City of Philadelphia*, 855 F.2d 136, 139–40 (3d Cir.1988); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 229–30 (3d Cir.1987); *Falcone v. Columbia Pictures Indus.*, 805 F.2d 115, 117 n. 2 (3d Cir.1986); *Mid–South Grizzlies v. National Football League*, 720 F.2d 772, 780 & n. 4 (3d Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984).

In this case, however, the district court judge who granted summary judgment (who succeeded to the case after the stay was denied) did not rely on the technical absence of an affidavit in holding that he would not withhold summary judgment because of the outstanding discovery. Instead, he relied exclusively on plaintiffs' delay.[2] Although we also will not base our opinion on the Rule 56(f) issue on the failure to file an affidavit, we call to the attention of the bar once again the *requirement* of the Rule. Compliance with that provision by a party opposing summary

---

**2.** We note that when the judge thereafter denied plaintiffs' motion to reconsider the grant of summary judgment, he relied on the reasons set forth in his summary judgment opinion and on the reasons set forth in the prior judge's July 20 order. In this sense, therefore, the technical failure to comply with Rule 56(f) can be viewed

as an additional ground used by the district court for denying further discovery. As noted in the text, we do not rely on this ground, although we do not foreclose this court in appropriate cases from doing so. *See Falcone*, 805 F.2d at 117 n. 2.

judgment on Rule 56(f) grounds will also facilitate supplying the district court with the information needed to rule on the Rule 56(f) motion.

Our case law makes clear that a Rule 56(f) motion must identify with specificity "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling*, 855 F.2d at 140 (citations omitted). *See also Hancock*, 811 F.2d at 230 (must show need for discovery and what material facts will be uncovered); *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir.1986) (must specify what discovery is needed and why it had not previously been obtained).

In its opinion granting summary judgment, the district court held that more discovery by plaintiffs was unwarranted primarily because they already had a substantial amount of time to conduct such discovery and had failed to do so. The district court noted that the case was filed on August 4, 1987, with orders that discovery be completed March 17, 1988. Although the district court had, on March 1, 1988, ordered plaintiffs to amend their complaint by providing greater specificity with respect to the allegedly defamatory statements, it was not until July 7, 1988 that plaintiffs attempted to initiate discovery of the representatives of the media. The district court stated that "[i]n their original complaint, plaintiffs allege that defendants defamed plaintiffs both inside and without the committee hearings. Thus, since the filing of their original complaint, plaintiffs suspected that statements were made outside of the hearings; yet, throughout an almost seven month discovery period [actually eleven months passed between the filing of the suit and the plaintiffs' attempt to depose the media], plaintiffs failed to make inquiries to the media about any statements allegedly made by defendants outside of the hearing. We think plaintiffs are groping in the dark for a cause of action." App. at 1194.

To refute the finding that they delayed in their pursuit of the necessary discovery, the plaintiffs point to their notices of deposition, interrogatories and a Request for Production of Documents served in December 1987 directed to the defendants which included requests for material and information relating to the dissemination of the allegedly defamatory information. However, plaintiffs did not pursue these requests after the parties agreed in February to limit discovery to the immunity issue. Plaintiffs now rely on *Costlow v. United States*, 552 F.2d 560, 564 (3d Cir.1977), where, in light of the unanswered interrogatories outstanding, we held that summary judgment was premature. In this case, however, the agreement reported by plaintiffs' counsel on February 23, 1988 designed "to shift the focus of discovery . . . to the immunity issues," App. at 1273, which specified certain outstanding discovery to be answered, did not include the plaintiffs' December 1987 discovery requests. Therefore, plaintiffs cannot fairly rely on those requests since they did not refer to them in their own letter to defendants' counsel.

■ It is also significant that although the agreement memorialized in plaintiffs' counsel's letter of February 23, 1988 specifically stated that "plaintiffs may engage in third party discovery again relating to the immunity issue during this period," plaintiffs did not file their notice to take the depositions of members of the media, the governor's press secretary, and the court reporter until July 7, 1988, after the period for discovery had closed. Moreover, although we stated in *Ward v. United States*, 471 F.2d 667, 670 (3d Cir.1973), that "[w]here . . . the facts . . . *are solely in the possession [of the moving party]* . . . a continuance of a motion for summary judgment for purposes of discovery should . . . be granted almost as a matter of course" (emphasis added) (citations omitted), in this case there was much relevant material in the possession of third parties which plaintiffs did not timely pursue.

Plaintiffs have not adequately explained their lack of diligence. *See Dowling*, 855 F.2d at 140; *Koplove*, 795 F.2d at 18. Under these circumstances, we cannot conclude that the district court abused its dis-

cretion in declining to withhold ruling on the motion for summary judgment on Rule 56(f) grounds.

## IV.

### The Statements

The district court, treating as before it on all four counts only the defendants' post-August 4, 1986 statements, directed its discussion to the three such statements identified by plaintiffs in paragraphs 22, 23 and 24 of their amended complaint. Those statements were made on October 10, 1986, October 16, 1986 and November 25, 1986. Defendants concede that the statements were made, but contend that they were made under circumstances which entitled them to a privilege or immunity from suit.

### The October 10, 1986 Statement

In paragraphs 22 and 23 of the original complaint, incorporated into the amended complaint verbatim, plaintiffs complain about an October 10, 1986 press release disseminated by defendants to the media, which they attached as Exhibit A to the complaint. In their motion for summary judgment, defendants included an affidavit by George J. Buddy, Information Specialist in the Legislative Information Office of the House of Representatives of the Commonwealth of Pennsylvania, in which Buddy states that Exhibit A to plaintiffs' complaint was the "official statement of Stanley R. Gochenour, Jr., which was orally read by Mr. Gochenour to the Committee on October 10, 1986." App. at 1055. In fact, Exhibit A is itself denominated as "Testimony Before the House Committee" with Stanley R. Gochenour, Jr.'s name below and the handwritten notation "10/10/86" above. App. at 28. The verbatim transcript of the hearing of the Select Committee held on October 10, 1986, which was filed in support of defendants' motion for summary judgment, verifies this.

It is evident from a review of the transcript that Gochenour read from the prepared statement when he began his testimony, albeit correcting it from time to time by pointing out typographical errors, see, e.g., App. at 968. He was thereafter questioned by members of the Committee who had copies of the statement and who directed his attention to specific pages of the statement. Gochenour's testimony was related to the information that he obtained as the Committee's investigator. He referred at numerous times to the fact that Lunderstadt and Scott knew, almost two years before the awarding of the fabrication contract, that it would be awarded to them, see, e.g., App. at 970, and that they had made the decision to pre-purchase granite six to seven months before the contract of pre-purchase was awarded. App. at 969. Gochenour testified that "Lunderstadt and Scott's ability to predict occurrences months and frequently years before they happened is clear on that point. Their repeated references during the bid process that they and an executive with the Dick Corporation were meeting with a State official who could affect the outcome of the bid award is demonstrated by history." App. at 985. He referred to the bidding in which Lunderstadt and Scott were involved as a "rigged game." App. at 978.

### The October 16, 1986 Statement

In paragraph 24(a) of the complaint, as amended, plaintiffs claim that on October 16, 1986 defendant Moore, the Committee's counsel, held a press conference with the concurrence of Committee Chairman Colafella, and that in the course of that press conference Moore reiterated the allegation that plaintiffs received $20,000 from Robert Billingsley, a principal in the firm that bought North American, for the purpose of making a payoff. The complaint alleges that Moore, along with his co-defendants, knew that there was no such information before the Committee and that Billingsley, on whom Moore had relied, had flatly denied that such was the case.

Defendants have included in their motion for summary judgment a copy of a press release denominated "Response to Rep. Piccola" "Press Conference" "October 16, 1986" to which is attached testimony of Billingsley before the Committee that he gave Lunderstadt and Scott an envelope containing $20,000 cash, meeting them "in

the parking lot at the corner." App. at 1061.

*The November 25, 1986 Statement*

Paragraph 24(b) of plaintiffs' amended complaint alleges that on or about November 25, 1986 defendants called a press conference to report the findings of the Select Committee's investigation into the purchase, fabrication and installation of granite on the Capitol, during which Colafella allegedly stated, "I think there was some criminal wrongdoing in this particular project." App. at 211. George Buddy, in his affidavit filed in opposition to summary judgment, states that he attended "the final session of the Committee on November 25, 1986, during which Chairman Colafella made a statement presenting the Committee's Final Report, which was then approved." App. at 1056. He further states that, "[t]o the best of my knowledge, there was no press conference held by the Committee on November 25, 1986 or otherwise in connection with the close of the Committee's investigation." *Id.* There is no copy of the report in the Appendix and apparently there was no transcript of a Committee session that day.

## V.

### *Discussion*

█ In granting immunity with respect to the statement made on November 25, 1986, the district court stated that "[d]efendant Colafella, as a state representative and Chairman of the Committee, is a party that the Speech and Debate Clause seeks to protect." App. at 1191. The court held also that Colafella's statements made while presenting the report during the Committee's last session constituted legitimate legislative activity since they occurred within an actual Committee session.

The Speech or Debate Clause of the United States Constitution is by its terms applicable only to members of the United States Senate and House of Representatives. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 404, 99 S.Ct. 1171, 1178–79, 59 L.Ed.2d 401 (1979). The "immunity of legislators from civil suit for what they do or say as legislators has its roots in the parliamentary struggles of 16th- and 17th-century England; such immunity was consistently recognized in the common law and was taken as a matter of course by our Nation's founders." *Id.* at 403, 99 S.Ct. at 1178.

In light of this tradition, the Supreme Court held in *Tenney v. Brandhove,* 341 U.S. 367, 376–77, 71 S.Ct. 783, 788–89, 95 L.Ed. 1019 (1951), that the same principle of legislative immunity was incorporated in the Civil Rights Act of 1871 and protected state legislators acting in the "sphere of legitimate legislative authority." *See also Supreme Court of Virginia v. Consumers Union of the United States,* 446 U.S. 719, 733, 100 S.Ct. 1967, 1975, 64 L.Ed.2d 641 (1980) ("we generally have equated the legislative immunity to which state legislators are entitled under § 1983 to that accorded Congressmen under the Constitution").

In *Tenney,* a witness filed a section 1983 suit against members of a committee of the California legislature, alleging that the hearing was designed to intimidate and silence him in violation of his constitutional rights. The Court held that although plaintiff had alleged that the hearing was not held for a legislative purpose, the suit was properly dismissed because "[t]he claim of an unworthy purpose does not destroy the privilege." *Id.* at 377. In affirming the broad scope of legislative immunity, the Court in *Tenney* explained, "[i]nvestigations, whether by standing or special committees, are an established part of representative government. Legislative committees have been charged with losing sight of their duty of disinterestedness. In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies." *Id.* at 377–78. These principles have been consistently applied, irrespective of the nature of the suit. *See, e.g., Gravel v. United States,* 408 U.S. 606, 615–16, 92 S.Ct. 2614, 2622–23, 33 L.Ed.2d 583 (1972) (motion by Senator to quash subpoena); *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 505–06, 95 S.Ct. 1813, 1822–23, 44 L.Ed.2d 324 (1975) (action seeking

injunctive relief against Senators to prevent enforcement of subpoena duces tecum issued by congressional committee).

The protection provided by the immunity accorded by the Speech or Debate Clause or legislative immunity is not limited to the legislator. In *Gravel,* the Court noted, "the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." 408 U.S. at 618, 92 S.Ct. at 2623; *see also Aitchison v. Raffiani,* 708 F.2d 96, 99 (3d Cir.1983) (borough attorney, acting as legal aide to borough council, entitled to absolute legislative immunity).

Legislative immunity is not limited to words spoken in legislative sessions. In *Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973), the Court held that members of a congressional committee and their investigators were immune from suit by students who complained that their rights to privacy had been infringed by a committee report which included details of their poor school performance. The immunity covered introduction of material at hearings, voting to publish the report, and distributing the report for legislative purposes to other members of Congress, congressional committees and "institutional or individual legislative functionaries." *Id.* at 312, 93 S.Ct. at 2024; *see also Eastland,* 421 U.S. at 504, 95 S.Ct. at 1822 ("The power to investigate and to do so through compulsory process plainly falls within [the legitimate legislative sphere and is therefore protected]."); *Government of Virgin Islands v. Lee,* 775 F.2d 514, 521 (3d Cir. 1985) ("fact-finding, information gathering, and investigative activities" are afforded legislative immunity).

A federal court with jurisdiction over pendent state law claims must look to state law to determine whether legislative immunity governs the challenged actions. Our analysis is facilitated in this case by the fact that the Pennsylvania Speech or Debate Clause, Art. II, § 15 ("for any speech or debate in either House [the legislators] shall not be questioned in any other place")

has been interpreted in accordance with the federal constitution's Speech or Debate Clause. *See Consumer Party v. Commonwealth,* 510 Pa. 158, 173–74, 507 A.2d 323, 330–31 (1986); *Sweeney v. Tucker,* 473 Pa. 493, 504, 375 A.2d 698, 703 (1977).

Applying these principles, we conclude that the district court did not err in holding that Colafella's statement of November 25, 1986 was protected. He was the chairman of a legislative committee. Statements made during a committee session are at the very core of the activity designed to be protected. There is nothing on the record to rebut Buddy's affidavit that the statement which constituted the Committee's final report was made only in the context of its introduction during the final committee session. Because there was apparently no other business, the absence of a transcript is understandable.

Plaintiffs claim that they believe news reporters were invited to attend the session. The mere fact that members of the press were present at a committee session is, of course, no reason to hold legislative immunity inapplicable. However, plaintiffs further assert that they believe that reporters were permitted to ask questions of Colafella and Moore, thereby suggesting that the occasion either constituted or turned into a press conference. There are no facts placed by plaintiffs on record to support this assertion. We have rejected plaintiffs' argument that they should be given an additional opportunity to elicit further discovery. We note that nothing in the court's orders prevented plaintiffs from introducing an affidavit by a reporter or other person who was present. We therefore agree with the district court that any claim based on the November 25, 1986 statement is barred.

Turning next to Gochenour's statement of October 10, 1986, the district court held that Gochenour's statements made as a witness before the committee testifying about the progress of his investigation were protected by testimonial immunity. The district court held that the privilege applied whether or not Gochenour was testifying from firsthand knowledge. The dis-

trict court based its decision as to immunity on section 590A of the Restatement (Second) of Torts adopted by the Pennsylvania Superior Court in *Jennings v. Cronin*, 256 Pa.Super. 398, 389 A.2d 1183 (1978). That section provides:

> A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding.

The court held that Gochenour's prepared statement which reflected his testimony before the Committee was protected as a communication preliminary to the hearing on a matter which had "some relation to the hearing." App. at 1193.

█ The district court did not specifically discuss the basis for holding that the October 10, 1986 statement was privileged under the section 1983 counts. State law privileges or immunities do not govern in a case grounded on federal rights. *See In re Grand Jury Proceedings*, 563 F.2d 577, 581 (3d Cir.1977). Nonetheless, the district court's implicit conclusion that the same testimonial immunity is equally applicable for federal as for state law claims was not erroneous. *Webster v. Sun Co.*, 731 F.2d 1, 4–5 (D.C.Cir.1984) (applying section 590A of the Restatement (Second) of Torts as the common law for testimonial immunity).

Plaintiffs argue that the district court erred in concluding that Gochenour, and indirectly Colafella, was protected because distribution of Gochenour's statement to the press is a republication which is not protected by testimonial immunity. In support of this proposition, plaintiffs rely on *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973), *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979), and *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). Although these cases did not involve the effect of republication on testimonial immunity but instead focused on whether Speech or Debate Clause immunity had been lost, we see no reason why the principles underlying loss of pro-

tection because of republication would not be equally applicable here.

In *Doe*, the Court held that the immunity applicable to a congressman protected the Public Printer and the Superintendent of Documents only to the extent that the publication and dissemination of a committee report itself served legitimate legislative functions. The Court stated that although it did "not doubt the importance of informing the public about the business of Congress," 412 U.S. at 314, 93 S.Ct. at 2025, the principles behind the immunity will not suffer if "those who, at the direction of Congress or otherwise, distribute actionable material to the public at large have no automatic immunity under the Speech or Debate Clause but must respond to private suits," *id.* at 316, 93 S.Ct. at 2026.

In *Gravel*, the Court held that the Speech or Debate Clause which protected Senator Gravel's placement of the Pentagon Papers into the Congressional Record did not extend to the Senator's distribution of the same papers to a private press for publication. The Court stated that private publication "was in no way essential to the deliberations of the Senate; nor does questioning as to private publication threaten the integrity or independence of the Senate by impermissibly exposing its deliberations to executive influence." 408 U.S. at 625, 92 S.Ct. at 2627.

*Hutchinson* contains the fullest analysis of the effect of republication on a legislator's constitutional or common law legislative immunity. Hutchinson filed a suit against Senator Proxmire, based on the derogatory remarks in one of the Senator's "golden fleece" awards about Hutchinson's federally-funded research. Initially, Proxmire either delivered the speech on the Senate floor or merely inserted it into the Congressional Record. The Court, assuming *arguendo* that both carried the same immunity under the Speech or Debate Clause, 443 U.S. at 116 n. 3, 99 S.Ct. at 2678 n. 3, nonetheless held that Proxmire was not protected from suit because he had repeated the essence of the speech in a newsletter sent to about 100,000 people in his State of Wisconsin as well as else-

where, incorporated the text into an advance press release which was sent to a mailing list of 275 members of the news media throughout the United States and abroad, and referred to the plaintiff's research in another newsletter and on a television interview program.

The Court extensively reviewed the historical antecedents of the Speech or Debate Clause and its interpretation in *Doe* and *Gravel* and concluded that "nothing in history or in the explicit language of the Clause suggests any intention to create an absolute privilege from liability or suit for defamatory statements made outside the Chamber." *Id.* at 127, 99 S.Ct. at 2684. The Court rejected the view that because newsletters and press releases may be valuable and desirable in transmitting information to the public, such transmittal of information is, therefore, part of the legislative function. In short, the Court held that "[w]e are unable to discern any 'conscious choice' to grant immunity for defamatory statements scattered far and wide by mail, press, and the electronic media." *Id.* at 132, 99 S.Ct. at 2686; *see also McSurely v. McClellan*, 553 F.2d 1277, 1285–86 (D.C. Cir.1976) (in banc) (dissemination of material to individuals or other government agencies outside of Congress is not protected activity), *cert. granted*, 434 U.S. 888, 98 S.Ct. 260, 54 L.Ed.2d 173 (1977), *cert. dismissed*, 438 U.S. 189, 98 S.Ct. 3116, 57 L.Ed.2d 704 (1978).

Appellants rely on this language in arguing that the dissemination of a press release containing Gochenour's prepared testimony was a republication which was not privileged. We must, however, view the facts on the basis of the record before the court on summary judgment. Buddy's affidavit states, "Mr. Gochenour's typewritten statement, which is not a press release, was disseminated only in the Committee Hearing Room to those present at the public hearing on October 10, 1986 at or about the time Mr. Gochenour was reading the statement to the Committee." App. at 1055–56. Plaintiffs have filed no contrary affidavit and we see no reason why they could not have done so, if the statement was disseminated as widely as they believe.

■ Therefore, we are faced with the question, which as far as we can tell is one of first impression, whether the contemporaneous release of the written remarks of a witness at the time of the testimony to observers in the room is the type of republication which subjects the witness to suit for the statements contained therein.

We see no reason why testimonial immunity should be lost under these circumstances. The hearing was an open one, it apparently generated some public and media interest, and the testimony was a matter of record. It could be expected that representatives of the media would be present to take notes of Gochenour's testimony. Unless they were skilled in shorthand, they were likely to miss or misstate some important parts of the testimony. This is unlike *Hutchinson* where, as the Court noted, the republication extended the allegedly defamatory statements far beyond the walls within which they were made. *See also McSurely*, 553 F.2d at 1277 (material disseminated outside Congress). Although the press members present here may have used the prepared text copy of Gochenour's testimony in reporting on the event, this is no more than they would have done on the basis of their own notes. As long as distribution of the text of Gochenour's testimony was limited to those present, it was merely a technical aid rather than a republication because it did not extend the effect of Gochenour's testimony beyond the boundaries of that testimony.

As in the case of the November 25, 1986 statement, there is no evidence that rebuts Buddy's affidavit. We conclude, therefore, that the district court did not err in ruling that suit on any of the claims could not be based on the statements of October 10, 1986. *See Green v. DeCamp*, 612 F.2d 368, 372 (8th Cir.1980) (release of state legislative committee report to news reporting and publishing agencies is legitimate legislative activity); *see also Consumers Union of United States, Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1350 (D.C.Cir.1975) (rules gov-

erning press privileges in House and Senate galleries are "an integral part of the legislative machinery" and decisions pursuant thereto are protected), *cert. denied*, 423 U.S. 1051, 96 S.Ct. 780, 46 L.Ed.2d 640 (1976).

■ In contrast with our rulings on the October 10, 1986 and the November 25, 1986 statements, we can see no reasons to hold that the statement made by Moore on October 16, 1986 is protected by a legislative immunity. The district court found, "[t]he undisputed facts establish that defendant Moore, on October 16, 1986, read a statement to the press which he prepared as a response to a press conference by State Representative Jeffrey Piccola." App. at 1190. It was in this statement that Moore referred to testimony of a purported payoff by Lunderstadt. The district court accepted defendants' representation that "[t]he statement was made on behalf of the Committee and was given to rebut charges by Representative Piccola that the Committee was on a political 'witchhunt.'" *Id.*

The district court held that the statement fell within the scope of legislative immunity because "a press conference and statement that defends the actions of a legislative committee is a legitimate legislative activity." App. at 1191. The court believed that the comments concerning Lunderstadt were incidental to the true purpose of the press conference, which was to prevent Representative Piccola "from misleading the public about the Committee's actions." *Id.* The court believed that immunity was necessary to protect the legislative process, since a legislator or an aide acting in his place "should be able to rebut a fellow legislator's criticism of the actions of a special committee without fear of reprisal in court." *Id.*

We believe that the district court gave too broad a scope to legislative immunity when it held that statements at a press conference are encompassed thereby. Indeed, as the Court stated in *Gravel*, "[l]egislative acts are not all-encompassing. The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they

must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." 408 U.S. at 625, 92 S.Ct. at 2627.

In *Chastain v. Sundquist*, 833 F.2d 311 (D.C.Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 2914, 101 L.Ed.2d 946 (1988), the court held that a congressman who sent a letter to the Attorney General about a matter of public interest and released that letter to the media was not immune from a common law suit for defamation. As that court stated, the congressman had "every right to monitor and challenge the manner in which the Legal Services Corporation operates" and "[w]ithin the halls of Congress, he can ... should he choose, libel with impunity the reputation and integrity of any lawyer working for the Corporation." *Id.* at 323. However, it noted, "in the heat of political contest, an immunity from suit for common law libel becomes a license to libel. It is precisely this danger, among others, that gave rise to the common law distinction between speech within the legislative chamber and speech outside it." *Id.* at 324.

By the same token, a legislative committee's desire to answer a political opponent does not constitute the type of legislative duties which the privilege protects. Such duties have been held to include investigation, votes, issuing subpoenas, distributing materials for legislative purposes to members of Congress and committees, and authorizing distribution of a committee report. *See Gravel*, 408 U.S. at 615, 92 S.Ct. at 2622; *McMillan*, 412 U.S. at 312–3, 93 S.Ct. at 2024–5; *Eastland*, 421 U.S. at 504–06, 95 S.Ct. at 1821–22.

The district court's assumption that the need to inform the public via a press conference is also a legislative duty for which there is immunity is inconsistent with the Supreme Court's analysis in *Doe* that notwithstanding the importance of informing the public about the business of Congress, legislative immunity does not extend to actionable material distributed to the public at large. Accordingly, we will remand this case for purposes of reinstating all of plain-

tiff's claims based on the October 16, 1986 statement. In so ruling, we do not discount the penumbra of immunity that protects aides as well as legislators. Our ruling would be the same had Moore's statements been made by a Committee member.

The district court did not discuss any claims based on defendants' statements before August 4, 1986. Although the district court's discussion of the statute of limitations began with reference to the one-year statute applicable to the state law claims of defamation and invasion of privacy, 42 Pa. Cons.Stat.Ann. § 5523 (Purdon 1981), its subsequent discussion of the merits and the immunity issue with respect to both the state and federal claims was limited to the post-August 4, 1986 statements. Appellants' arguments on the substance of the court's rulings in their principal brief on appeal are also directed only to their contention that the court erroneously held that immunity applied to the three post-August 4, 1986 statements.

We note that appellants could have argued with some force that the section 1983 claims based on statements made before August 4, 1986 are not barred because there is a two-year statute of limitations applicable to section 1983 claims filed in Pennsylvania, see Smith v. City of Pittsburgh, 764 F.2d 188 (3d Cir.), cert. denied, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985). They failed to do so. Apparently in response to the statement in appellees' brief that appellants challenge on appeal only the dismissal of the post-August 4, 1986 statements, appellants in their reply brief state merely that "[t]he court clearly did not rule, and as a matter of law could not have ruled, that the section 1983 actions were time barred. See Owens v. Okure, [— U.S. —], 109 S.Ct. 573 [102 L.Ed.2d 594 (1989)]; 42 Pa. C.S.A. § 5524(7)." Appellants' Reply Brief at 7–8 n. 3.

We do not regard this casual statement made in a footnote in a reply brief as a preservation on appeal of the claim that the district court erred in dismissing the section 1983 claims based on these earlier statements. Fed.R.App.P. 28(a)(2) and (4) require that the appellant's brief shall contain under appropriate headings a "statement of the issues presented for review" and that the argument section of the brief "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." The brief of the appellant does not meet either of these requirements with respect to the statute of limitations issue.

Moreover, we believe it is disingenuous of counsel to argue that the court did not rule that a portion of the section 1983 claims were time barred, since appellants have never suggested that any claim remained pending in the district court after the court's order granting summary judgment. While the district court may not have discussed the statute of limitations in the context of the section 1983 claims, and it may indeed have ruled erroneously, there is no question but that it dismissed all portions of those claims. We conclude that appellants have not preserved any argument that the court acted erroneously in so doing.[3]

## VI.

### Summary

To recapitulate, we have concluded that notwithstanding the possibly tenuous legal basis for the plaintiffs' section 1983 claims, the district court had subject matter jurisdiction; that the court did not abuse its discretion in denying plaintiffs' Rule 56(f) motion; and that, with respect to the claims which plaintiffs properly preserved, the district court did not err in granting summary judgment on plaintiffs' claims based on the October 10 and November 25, 1986 statements but did err in entering judgment on claims based on the October 16, 1986 statement.

Because we must remand that claim, we note that the district court may want to

---

3. We note, however, that in light of the tenuous basis for appellants' section 1983 claims, see Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and Sturm v. Clark, 835 F.2d 1009 (3d Cir.1987), we doubt that the waiver adversely affected appellants' rights.

address at an early stage the serious question raised by the defendants' answer as to whether the complaint states a claim with respect to the section 1983 claims. We have previously alluded to our concern that the reputational interests assertedly injured by plaintiffs may not amount to the type of liberty or property deprivation upon which a constitutional claim must be grounded. *See Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (stigma to reputation not property or liberty interest); *Sturm v. Clark*, 835 F.2d 1009 (3d Cir.1987) (attorney's due process rights not violated by prison directives referring to her "disruptive and unprofessional behavior" absent showing of more than simply damage to reputation and resulting financial harm).[4] In particular, *Green v. DeCamp*, 612 F.2d at 369–71, may be of some interest in that the reputational interests asserted were allegedly injured by a legislative committee report.

We recognize that the district court undoubtedly reached the immunity and privilege issue in the first instance because legislators are entitled to protection from claims based on acts which are immunized before exposure to trial occurs. *See Helstoski v. Meanor*, 442 U.S. 500, 508, 99 S.Ct. 2445, 2449, 61 L.Ed.2d 30 (1979). In light of the remand, the district court may now want to determine whether the federal claims can withstand a Rule 12(b)(6) challenge and, if not, whether the pendent claims should also be dismissed. *See Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187 (3d Cir.1976).

For the foregoing reasons, we will vacate the summary judgment insofar as it dismissed plaintiffs' claims arising out of the October 16, 1986 statements, and we will remand for further proceedings consistent with this opinion.

---

**4.** In this connection we note that on questioning at the oral argument, plaintiffs' counsel conceded that the allegation in the complaint that plaintiffs have been deprived of the right to bid on state contracts was not intended to allege any specific governmental bar but merely the difficulty they have experienced arising from the allegedly defamatory statements.