

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-2009

# Ambrosio Rouse v. II VI Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3922

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Ambrosio Rouse v. II VI Inc" (2009). *2009 Decisions*. Paper 1363.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1363

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3922
_____

AMBROSIO ROUSE

Appellant,

v.

II-VI INCORPORATED; BRUCE GLICK, individually;
CSABA SZELES, individually; KERRY COURTNEY,
individually; CARL JOHNSON, individually; MARLENE
ACRE, individually; FRANCIS KRAMER, individually

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 06-cv-00566)
District Judge: Honorable Terrence F. McVerry

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 13, 2009

Before: FISHER, JORDAN and VAN ANTWERPEN, Circuit Judges

(Opinion filed: May 14, 2009)

_____

OPINION
_____

PER CURIAM

Appellant Ambrosio Rouse, Ph.D., a black male and citizen of Panama, began his

employment with eV Products, a division of defendant II-VI Incorporated ("II-VI"), as a surface processing engineer.[1] His primary responsibilities concerned scientific research and the development of II-VI's products. He later became a Research and Development ("R&D") surface processing scientist at the company. Defendant Csaba Szeles, Ph.D., was Rouse's direct supervisor, and the one who evaluated his performance. For the period covering January 31, 2000 through January 31, 2001, Rouse's first year with the company, Szeles determined that Rouse had performed at the level expected of him. For the next period, from January 31, 2001 through January 31, 2002, Szeles reported as follows with respect to Rouse's performance:

> He fell a bit short on his first technical goal mainly because of insufficient dissemination of polishing proven development results. It is recommended that he puts [sic] more emphasis to the dissemination of his results in written reports, overview presentations and tutorials to the eV organization. He also need [sic] to continuously improve on research planning and project focus. Good progress in technical areas. Need [sic] improvement for communication and project management.

See Defendant's Motion for Summary Judgment, at Exhibit "M." In an email to Szeles dated May 6, 2002, defendant Bruce Glick, the Division Manager, also expressed concerns about Rouse's performance.

Szeles evaluated Rouse's performance for the following year, January 31, 2002 through January 31, 2003, on June 27, 2003. On that occasion, Szeles expressed the

---

[1] Because we write primarily for the parties, and they are familiar with the background of this case, we include only those factual and procedural details necessary to our discussion.

opinion that Rouse needed to significantly improve his performance. The performance appraisal was supplemented with a detailed examination of Rouse's performance signed by both Szeles and Rouse. Specifically, it was noted that Rouse had failed to make any progress on the first performance appraisal Improvement Target aimed at determining the impact of hydrogen pre-cleaning on the electrical performance of CdZnTe detector devices using analytical techniques and I-V measurements. Rouse completed his second Improvement Target at only a 30% level due to superficial analysis and interpretation of data. In addition to deficiencies related to specific scientific tasks, Szeles indicated that Rouse exhibited "insubordination to team goals," a "desire for individual projects and successes," "poor planning," and a "typical superficial 'chasing a dream' approach." See Defendant's Motion for Summary Judgment, at Exhibit "O."[2]

Szeles asked Rouse to do a power point visual aid concerning process cleaning on January 28, 2004, which Szeles needed for a presentation he was to give before a manufacturing audience. Rouse emailed Szeles his work product, but, in responsive

[2] On January 31, 2003, Rouse had unilaterally forwarded to II-VI employees a report concerning "polishing and detector performance." Szeles objected to the release of the report without prior review and discussion by the R&D group. Szeles indicated in a February 2003 email that the eV organization's employees would be left with the impression that Rouse performed his research independently of the R&D group, and the release of the report would lead to the misperception that the conclusions expressed in it represented the views of the R&D group, which was not the case. Szeles concluded the email by saying that he and Rouse needed to discuss Rouse's "personal aspirations," "car[eer] objectives" and "work style," and how they were able to fit in with "the goals and operations of the eV team." See Defendant's Motion for Summary Judgment, at Exhibit "Q."

3

emails Szeles complained that Rouse's draft was overlong and not responsive – it did not include the specific information that was needed. See Defendant's Motion for Summary Judgment, at Exhibit "R."

On May 6, 2004, Szeles met with Rouse and they discussed the results of a study Rouse had performed pertaining to the techniques employed at eV Products to measure the electron mobility-lifetime product ($\mu\tau$) of the company's CdZnTe material. Szeles documented the meeting in which he determined that Rouse had a "very poor" understanding of the experimental techniques and analysis method he was using, despite "many-many hours" Szeles had spent with him over four years teaching him the "technique, the operation of the equipment components, and analysis methods..." See Defendant's Motion for Summary Judgment, at Exhibit "S." Glick was present at this meeting and he too documented his observations that Rouse did not fully understand the experimental techniques he was using. See Defendant's Motion for Summary Judgment, at Exhibit "T." Rouse also was criticized because many of his scientific conclusions were already widely known in the industry and thus were of no added value to II-VI.

The meeting continued on May 14, 2004, after which Glick further documented his displeasure with Rouse's ability to function as a research scientist for II-VI. Following this meeting, on May 19, 2004, Rouse was informed that his employment with II-VI was being terminated. He was formally separated from the company thirty days later. The company, in accordance with policy, promised Rouse only a neutral reference.

4

On August 2, 2004, Rouse filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he had been terminated because of his race and his age (which was 43 years old).  On June 16, 2005, Rouse filed a complaint against II-VI, Glick, Szeles and Human Resources Representative Kerry Courtney in the Court of Common Pleas of Allegheny County, Pennsylvania, Rouse v. Glick, et al., No. GD 05-13843.  After oral argument on the defendants' preliminary objections, the Honorable Judith Friedman dismissed Rouse's state amended complaint on the merits.  The Superior Court dismissed Rouse's appeal on October 4, 2006, for failure to prosecute because he failed to file a brief.

Meanwhile, after the EEOC issued a right to sue letter, Rouse commenced the instant action pro se in United States District Court for the Western District of Pennsylvania on April 28, 2006.  He named II-VI, Glick, Szeles and Courtney as defendants and asserted claims for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 et seq., and 42 U.S.C. § 1981 and § 1985(3).  Rouse also included counts for tortious interference with a contractual relationship, breach of contract, breach of fiduciary duty, fraudulent misrepresentation, civil conspiracy, and intentional infliction of emotional distress.  Later, he filed an amended complaint, adding II-VI corporate officers Carl Johnson, Marlene Acre, and Francis Kramer as defendants.  Rouse also added a

5

claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Initially, the defendants moved to dismiss the complaint; that motion was denied in part and granted to the extent that claims under the ADEA and Title VII arising out of incidents that occurred 300 days before the EEOC filing were dismissed as time-barred.

Following extensive discovery, in which Rouse, Szeles, Glick and others were deposed, the defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). That motion was supported with deposition testimony and exhibits. Rouse responded in opposition with similar items. In an order entered on July 24, 2008, the District Court granted the defendants' motion for summary judgment. Rouse's timely motion for reconsideration subsequently was denied. Rouse appeals pro se.

We will affirm. We have jurisdiction under 28 U.S.C. § 1291. Rouse contends on appeal that there existed a triable issue whether the company's reasons for terminating him were pretextual and whether discrimination was a motivating factor in the decision to terminate him, the District Court abused its discretion in limiting discovery, the District Court erred in denying his motion to strike certain exhibits from the defendants' motion for summary judgment, and the District Court erred in applying res judicata and collateral estoppel to half of his claims. Our review of the District Court's grant of summary judgment is plenary and we must affirm summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

6

Federal Rule of Civil Procedure 56(e), concerning the requirements for opposing a motion for summary judgment, provides that Rouse, as an adverse party, "may not rest upon the mere allegations or denials of [his] pleading, but [his] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." On the other hand, final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor may a district court weigh the evidence. See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).

The District Court addressed Rouse's discrimination claims under Title VII, the ADEA, and the PHRA on the merits. We have carefully reviewed the record and conclude, as did the District Court, that there was an insufficient evidentiary basis on which a reasonable jury could find in Rouse's favor on his claims of discrimination. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The complainant in a Title VII disparate treatment theory action must carry the initial burden of offering evidence to create an inference that an employment decision was motivated by discriminatory animus. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If a prima facie case is established, the defendant must articulate a legitimate, nondiscriminatory reason for the plaintiff's adverse treatment. Id. at 802-803. If the defendant articulates such a reason, the burden shifts to the plaintiff to demonstrate that the reason is merely a pretext for illegal employment discrimination. Id. at 804-805. See

also <u>Sempier v. Johnson & Higgins</u>, 45 F.3d 724, 728 (3d Cir. 1995) (involving the ADEA).

We will assume, as did the District Court, that Rouse made out a prima facie case of race and age discrimination even though his prima facie case was weak. However, II-VI adequately showed that the reason for his termination was substandard performance. <u>See</u> <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506-07 (1993). Rouse thus was required to cast doubt on the legitimacy of II-VI's reasons or provide evidence of discrimination. To survive a motion for summary judgment, a plaintiff may prevail *either* by discrediting the employer's proffered reasons or by showing that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. <u>See</u> <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994).

Rouse gave testimony under oath at his deposition, and his sworn testimony did not satisfy his burden. <u>See</u> District Court Memorandum and Order, 7/24/08, at 30-32 (citing Rouse deposition, <u>passim</u>). He maintained that Glick's and Szeles's critical evaluation of his performance was unjustified, but he had no evidence other than his subjective opinion that it was unjustified. The company's appraisal of his performance was richly detailed; Rouse's objection to it consisted of bald assertions to the contrary. This was not enough to survive a summary judgment motion because it did not show that the company's reasons were unworthy of credence. <u>See</u> <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 143 (2000). Furthermore, Rouse did not contend that any of

8

the individual defendants ever made a comment which led him to believe that they harbored animus based on race or age, and he had no evidence that white or younger scientists with similar histories were treated preferentially. He thus failed to cast doubt on the legitimacy of II-VI's decision to terminate his employment. The record is simply devoid of any evidence to show that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause in this employment decision. Fuentes, 32 F.3d at 765 ("To discredit the employer's proffered reason ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.")

With respect to Rouse's mixed motive theory, the District Court reasoned that he would have to show, by a preponderance of the evidence, sufficient evidence for a reasonable jury to conclude that race was a motivating (rather than a determinative) factor in the decision to terminate his employment. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003); 42 U.S.C. § 2000e-2(m) (restricting remedies where both permissible and impermissible factors motivated employer's decision).[3] We note that the "mixed motive" standard is normally used in instructing juries, Desert Palace, 539 U.S. at 96-97. However, assuming arguendo that a "mixed motive" analysis is proper at the summary judgment stage, we agree with the District Court that Rouse did not establish a triable

---

[3] Section 2000e-2(m) has no application to ADEA claims. See Glanzman v. Metropolitan Management Corp., 391 F.3d 506, 512 n.3 (3d Cir. 2004).

9

issue, because he pointed to no evidence that race played any role at all in his termination. His argument in the main was focused on attacking the company's judgment that his performance was not, as he contends, "stellar" (Appellant's Brief, at 16); it was not focused on showing that race played a role in the company's decision.

We note that the District Court reviewed significant amounts of deposition testimony and exhibits, and pages upon pages of legal argument presented by Rouse, but the court's thorough review necessarily led to the inescapable conclusion that Rouse's testimony, even if believed, did nothing to call the motives of II-VI into question. The District Court applied the correct governing law in determining that there was nothing for a jury to decide. Since no reasonable jury could conclude that Rouse's race or age was a determinative factor in his termination, or that his race was a motivating factor in his termination, summary judgment properly was granted with respect to Rouse's discrimination claims under Title VII, the ADEA and the PHRA.[4]

The District Court applied the doctrines of claim preclusion and collateral estoppel to Counts 7-16 of Rouse's amended complaint in granting summary judgment. Counts 7 and 8 asserted discrimination and retaliation claims under 42 U.S.C. § 1981. Counts 9

---

[4] Rouse also asserted retaliation claims under all three of these provisions. For the reasons given by the District Court, summary judgment for the defendants was proper on these retaliation claims. Rouse did not establish that he engaged in conduct protected by the ADEA. Although he complained about being a victim of race discrimination just before he was terminated, Rouse failed to either discount the articulated reasons of II-VI for discharging him or provide affirmative evidence that II-VI was motivated by a retaliatory animus, and, thus, no reasonable jury could conclude that he was terminated in retaliation for complaining.

and 10 asserted discrimination and retaliation claims under 42 U.S.C. § 1985(3). In Count 11, Rouse claimed that Glick, Szeles, Courtney, Johnson, Acre and Kramer tortiously interfered with his contractual relationship with II-VI. Count 12 was based on a theory of breach of contract, while Count 13 was based on a breach of fiduciary duty theory. In Count 14, Rouse alleged that the defendants committed the torts of fraudulent misrepresentation and fraudulent inducement. Count 15 was premised on a theory of civil conspiracy, and, in Count 16, Rouse claimed that the defendants committed the tort of intentional infliction of emotional distress.

However, Rouse previously had filed a complaint in the Allegheny County Court of Common Pleas against Szeles, Glick, Courtney, and II-VI, raising claims of intentional infliction of emotional distress, negligent performance appraisal, negligent supervision, failure to investigate, intentional interference with prospective employment, negligent retention, negligent training, and negligent failure to provide a safe work environment. After numerous amendments, Rouse's amended complaint was dismissed on the merits. The state trial judge concluded, in pertinent part, that none of his tort or contractual claims based on his having been fired were compensable under Pennsylvania law because he was an "at-will" employee. See Defendant's Motion for Summary Judgment, at Exhibit "EE." In particular, there is no duty under Pennsylvania law to provide a reference for a former employee or to provide supervisors with training in the proper preparation of performance evaluations. Id. In addition, Rouse's allegations did not

support a claim for intentional infliction of emotional distress.

When a judgment is rendered by a state court, federal courts are statutorily bound by the doctrines of res judicata (or claim preclusion) and collateral estoppel (or issue preclusion) to honor it. San Remo Hotel, L.P. v. County of San Francisco, Cal., 545 U.S. 323, 336 (2005) (citing Allen v. McCurry, 449 U.S. 90, 94-96 (1980)). Parties are not permitted "to relitigate issues that have been resolved by courts of competent jurisdiction." Id. The doctrine of claim preclusion prohibits reexamination not only of matters actually decided in a prior case, but also those that the parties might have, but did not, assert in that action. See Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1070 (3d Cir.1990).

In Rouse's case, the District Court was required to give the judgment rendered by the Court of Common Pleas of Allegheny County the same preclusive effect it would be accorded by a Pennsylvania court. See Lance v. Dennis, 546 U.S. 459, 466 (2006). Res judicata applies in Pennsylvania. See Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995). A valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privities on the same cause of action. Id. It is undisputed that the basis for Rouse's action in the Court of Common Pleas of Allegheny County was the same employment termination decision at issue in the instant federal action. The action involved four of the same parties: II-VI, Glick, Szeles and Courtney. To determine whether res judicata applied, the District Court thus was required to decide

12

(1) whether the action in the Court of Common Pleas involved the same "cause of action" as the instant action; (2) whether the parties had the capacities to sue or be sued in the Court of Common Pleas; and (3) whether the litigation in the Court of Common Pleas resulted in a decision on the merits. See Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 548 (3d Cir. 2006) (recognizing these factors as necessary to res judicata inquiry); Balent, 669 A.2d at 313.

As a threshold matter, the District Court, having previously denied the defendants' motion to dismiss Rouse's complaint, was nonetheless free to reconsider the res judicata issue at the summary judgment stage. The court then properly concluded that all factors were satisfied. The cause of action in state court was the same, there was no jurisdictional impediment to bringing the section 1981 and section 1985(3) civil rights claims in state court, Maine v. Thiboutot, 448 U.S. 1, 3 n.1 (1980), and the state trial judge clearly rendered a decision on the merits. Having chosen to litigate his case first in a Pennsylvania court, Rouse's vehicle to remedy any resulting errors was to pursue his appeal in the Superior Court rather than abandon it. We recognize that Johnson, Acre and Kramer were not named parties in the state court action, but the doctrine of res judicata applies to and is binding, not only on the actual parties to the litigation, but also to those who are in privity with them. Turner, 449 F.3d at 549 n.11 (citing Stevenson v. Silverman, 208 A.2d 786, 788 (1965)). "Pennsylvania courts apply the doctrine of res judicata 'to different parties where one is vicariously responsible for the conduct of

13

another, such as principal and agent or master and servant,'" id. (quoting Day v. Volkswagenwerk Aktiengesellschaft, 464 A.2d 1313, 1317 (Pa. Super. Ct. 1983). Accordingly, the defendants were entitled to summary judgment on Counts 8 - 16 of the amended complaint on the basis of claim preclusion.

Last, because Rouse did not brief the ERISA issue on appeal, we deem it waived. Lunderstadt v. Colafella, 885 F.2d 66, 78 (3d Cir. 1989) ("casual statement" cannot serve to preserve issue on appeal where it is contained in neither statement of issues on appeal nor argument section of brief).  In addition, the District Court did not err in denying his motion for reconsideration as an improper attempt to recast arguments that had already been rejected, see Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), or in denying his motion to strike exhibits from the defendants' motion for summary judgment on the ground that there was no authentication problem and the defendants would be able to lay a proper foundation for their admission at trial.  Also, we are not persuaded that the District Court abused its discretion in any of its discovery rulings, see Williams v. Morton, 343 F.3d 212, 222 (3d Cir. 2003).[5]

---

[5] Rouse contends that, because he filed his EEOC intake form on June 15, 2004, the 300-day period should have been calculated – for purposes of the time-bar and the relevant period for discovery – from that date under Federal Express Corp. v. Holowecki, 128  S. Ct. 1147 (2008), instead of from the date he filed his EEOC charge.  We need not resolve the impact of Holowecki on this case, because it made no difference to Rouse whether October 2, 2003, or a day 48 days earlier was the appropriate cut-off date for purposes of the time-bar and discovery.  The record reflects that discovery was liberally granted, that relevant items that predate the date suggested by Rouse were turned over in discovery, and that the District Court's choice of October 2, 2003 as the cut-off date in no way prevented Rouse from prosecuting his claims of discrimination.

14

For the foregoing reasons, we will affirm the orders of the District Court granting summary judgment to the defendants and denying Rouse's motion for reconsideration. We also affirm the interlocutory orders appealed.