OCTOBER 11, 1983

No. 82–2151.   FRESH POND SHOPPING CENTER, INC. *v.* CALLAHAN ET AL.   Appeal from Sup. Jud. Ct. Mass. dismissed for want of substantial federal question.

JUSTICE REHNQUIST, dissenting.

Appellant, Fresh Pond Shopping Center, Inc., signed a purchase agreement in June 1979 whereby it would acquire a six-unit apartment building located adjacent to some property it already owned.   Appellant planned to demolish the building and pave over the lot to provide parking to a commercial tenant of the shopping center.   Because the apartment units were rent-controlled rental housing, under the terms of Cambridge City Ordinance 926 (1979) appellant first had to obtain permission from the Cambridge Rent Control Board to remove the property from the rental housing market.   Although at the time the removal permit was sought only one of the six units was occupied, the Board denied the permit.

The Superior Court for Middlesex County held that under the decision of the Massachusetts Supreme Judicial Court in *Flynn* v. *City of Cambridge,* 383 Mass. 152, 418 N. E. 2d 335 (1981), the restrictions on removing the apartments from the rental market in Cambridge imposed by Ordinance 926 were constitutional.   The

decision of the Superior Court was affirmed by an equally divided Massachusetts Supreme Judicial Court. *Fresh Pond Shopping Center, Inc.* v. *Rent Control Board of Cambridge*, 388 Mass. 1051, 446 N. E. 2d 1060 (1983). I would note probable jurisdiction in this case because I believe the case presents important and difficult questions concerning the application of the Takings Clause of the Fifth Amendment, as made applicable to the States by the Fourteenth Amendment of the Constitution, which have not been decided before by this Court. They might be postponed or avoided if the case were here on certiorari, but the case is an appeal; we act on the merits whatever we do.

The primary feature of the Cambridge rent control statute, 1976 Mass. Acts, ch. 36, is to place virtually all residential rental property in Cambridge under control of the Cambridge Rent Control Board, whose members are appellees here. Owners of rent-controlled property are also prohibited from evicting tenants without first obtaining a certificate of eviction from the Rent Control Board. The statute limits issuance of eviction certificates to circumstances where tenants have committed certain improper acts. It preserves the landlord's right to obtain a certificate of eviction to recover possession of the property only for occupancy by the owner or certain of his family members, or if the property is to be removed from the housing market through demolition or otherwise.

Although the state enabling statute preserves in limited fashion a landlord's traditional right to evict a tenant in order to occupy a rental unit personally, Cambridge City Ordinance 926 eliminated the landlord's right to evict a tenant save when the Rent Control Board first issues a "removal" permit. Ordinance 926 delegates virtually unfettered discretion to the Board to determine whether to grant a removal permit. The Board may consider the benefits of denying removal to the tenants protected by rent control, the hardship upon existing tenants of the units sought to be removed, and the effect of removal on the proclaimed housing shortage in Cambridge. Nowhere does the ordinance suggest that these considerations be balanced against the landlord's right to put his property to other uses. In short, Ordinance 926 permits denying a "removal" permit in any situation.

The combined effect of the limitations imposed by the state enabling statute and Ordinance 926 is to deny appellant use of his property. Appellant, as a corporate entity, simply cannot occupy the remaining apartment for personal use. In effect, then, the

Rent Control Board has determined that until the remaining tenant decides to leave, appellant will be unable to vacate and demolish the building. In my view this deprives appellant of the use of its property in a manner closely analogous to a permanent physical invasion, like that involved in *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U. S. 419 (1982). In *Teleprompter* we were presented with the question whether a New York law that authorized a cable television company to install cable facilities on other persons' property without permission or effective compensation constituted a taking in violation of the Fifth and Fourteenth Amendments. Though the physical invasion was minor, we "conclude[d] that a permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve." *Id.*, at 426. We called a permanent physical occupation of another's property "the most serious form of invasion of an owner's property interest." *Id.*, at 435.

As the Cambridge ordinance operates in this case, I fail to see how it works anything but a physical occupation of appellant's property. First, appellant's right to evict the tenant was limited by state law to two circumstances: occupation of the rental unit by the owner or certain members of his family, or demolition. The first of these rights is not available to appellant. The second, demolition, is controlled by Cambridge Ordinance 926, and under the administration of that ordinance by the Cambridge Rent Control Board, appellant has been denied the right to remove the unit from the housing market by demolition. It is not certain whether the Rent Control Board would, if the tenant decided to leave, determine that a demolition permit should issue, but it is clear that until the tenant decides to leave of his own volition, appellant is unable to possess the property.

There is little to distinguish this case from the situation confronting the Court in *Teleprompter*. As in *Teleprompter*, the power to end or terminate the physical invasion is under the control of a private party. As in New York, the Massachusetts Legislature can alter the rent control statute to provide appellant with some other means of restoring control of his property. But neither of these factors moved the Court away from its holding in *Teleprompter* that the physical invasion amounted to a taking. I must conclude, as the Court did in *Teleprompter*, that Ordinance 926 has effected a permanent physical invasion of appellant's property.

It might also be argued that the rent control provisions are justified by the emergency housing shortage in Cambridge, but the very fact that there is no foreseeable end to the emergency takes this case outside the Court's holding in *Block* v. *Hirsh*, 256 U. S. 135 (1921). At issue in *Block* was the constitutionality of a rent control statute enacted by Congress to regulate rents and rental practices in the District of Columbia. Like the rent control practices employed in Cambridge, the regulations disputed in *Block* fixed rents and denied the landlord the right to evict a tenant except to allow the owner or a member of his family to occupy the unit. We held the rent control statute constitutional because it was enacted to deal with a wartime emergency housing shortage. We noted that "[a] limit in time, to tide over a passing trouble, may well justify a law that could not be upheld as a permanent change." *Id.*, at 157. Thus, although we upheld a regulatory scheme in *Block* that is remarkably similar to that presently in force in the city of Cambridge, we reserved judgment as to whether such a regulatory scheme would be constitutional if it were made part of a permanent scheme. The Cambridge rent control ordinance presents the question thus reserved.

The provision in the Massachusetts statute ensuring a fair net operating income to the landlord does not change the result that should attend this case. In previous decisions we have recognized that property ownership carries with it a bundle of rights, including the right "'to possess, use and dispose of it.'" *Teleprompter, supra*, at 435 (quoting *United States* v. *General Motors Corp.*, 323 U. S. 373, 378 (1945)). Though no issue is raised here that the rent paid by the tenant is insufficient, that fact does not end the inquiry. What has taken place is a transfer of control over the reversionary interest retained by appellant. This power to exclude is "one of the most treasured strands in an owner's bundle of property rights [,because] even though the owner may retain the bare legal right to dispose of the occupied space by transfer or sale, the permanent occupation of that space by a stranger would ordinarily empty the right of any value, since the purchaser will also be unable to make any use of the property." *Teleprompter, supra*, at 435–436. Cf. *Bowles* v. *Willingham;* 321 U. S. 503, 517 (1944) (constitutional wartime rent control did not require owner to offer accommodations for rent). Nothing in the rent control provisions requires the Board to compensate appellant for the loss of control over the use of its property.