634 A.2d 533

MOBILE HOME VILLAGE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, T/A SOUTH WIND VILLAGE, PLAINTIFF–APPELLANT, v. MAYOR AND COUNCIL OF THE TOWNSHIP OF JACKSON, THE JACKSON TOWNSHIP RENT CONTROL BOARD, AND THE ESTATE OF KURT H. AND SOPHIE BIELE-FELOT, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 4, 1993—Decided January 20, 1993.

Before Judges SHEBELL and CONLEY.

*Christopher J. Hanlon* argued the cause for appellant (*Gross, Hanlon, Truss & Messer*, attorneys; *Mr. Hanlon*, on the brief and reply brief).

*Thomas G. Gannon* argued the cause for respondents Mayor and Council of the Township of Jackson (*Hiering, Hoffman & Gannon,* attorneys; *Mr. Gannon,* on the brief).

*Courtland T. Babcock,* II, argued the cause for respondent Jackson Township Rent Control Board (*Babcock, Hennes & Bielory,* attorneys; *Mr. Babcock,* on the brief).

Respondent Estate of Kurt H. and Sophie Bielefelot did not file a brief.

SHEBELL, J.A.D.

Plaintiff, Mobile Home Village, Inc., owned a 250–unit mobile home park in Jackson Township, Ocean County, called South Wind Village. As such, plaintiff became subject to the provisions of the Jackson Township Rent Control Ordinance (the Ordinance). Kurt H. and Sophie Bielefelot owned a 1972 Forrest Park mobile home located on a rented space in South Wind Village. The last surviving owner died in or about 1989, and the owner's heirs sought to sell the mobile home that was located on the rented space.

On January 19, 1990, plaintiff filed an application for a rent increase because the tenancy relationship ended upon the death of the last surviving owner. As of that date, the controlled rent for the space was $190.31 per month. The Rent Control Board of Jackson Township (Board) conducted hearings on plaintiff's application on March 9 and April 3, 1990.

At the Board hearings, plaintiff presented the testimony of a real estate appraiser. He testified that the fair market rental value of the mobile home rental space in question was $325. The appraiser also testified that the Bielefelot's mobile home was being offered for a sale price of $25,000. He opined that the value of the mobile home would be only $8,000 if plaintiff was permitted to charge the fair market value rent for the space. The Board denied the relief sought by plaintiff. The Board's denial was appealed to the Mayor and Council of Jackson Township (Town-

ship) which also denied relief. Plaintiff filed a complaint in lieu of prerogative writs on May 8, 1990, seeking compensation as the Ordinance effected a taking of plaintiff's property.

On September 20, 1991, the matter was tried before the Law Division on the bifurcated question of liability. On October 30, 1991, Judge Rosalie B. Cooper ruled that the Ordinance did not effect a taking of plaintiff's property in violation of the United States Constitution and 42 *U.S.C.* § 1983. The judge denied plaintiff's request for attorney fees under 42 *U.S.C.* § 1988 and ordered that the plaintiff's challenge to the Board's action be dismissed with prejudice. Plaintiff appeals from this judgment. We affirm Judge Cooper's order.

During the pendency of its appeal, plaintiff filed a motion for a stay on the basis that "the identical issue involved in this Fifth Amendment Takings claim against the absence of vacancy decontrol in the Jackson Township Mobile Home Park Rent Control Ordinance is involved in an appeal presently pending before the United States Supreme Court." On January 6, 1992, we denied this motion.

The Township and the Board moved to dismiss plaintiff's appeal after the case of *Yee v. City of Escondido,* 503 *U.S.* ——, 112 *S.Ct.* 1522, 118 *L.Ed.*2d 153 (1992), was decided contrary to the position asserted by plaintiff. The plaintiff cross-moved to supplement the record or remand. After both motions were denied, the Township and the Board moved to permit the filing of a brief. Their motions were granted on July 2, 1992.

Plaintiff's primary contention in this appeal is that:

[T]he combined effect of taking away the landlord's rights to determine who will be in possession of the land, together with the artificial premium that the tenant who happens to be in possession may now obtain as a result of the fact that rents are artificially maintained at a below market level in the resale, represents a physical taking accomplished by operation of both the State Statute and Rent Control Ordinance.

*N.J.S.A.* 46:8C–3a provides:

No mobile home park shall deny any resident of such mobile home park the right to sell said resident's mobile home within the park or require the resident to

remove the mobile home from the park solely on the basis of the sale thereof. The park may reserve the right to approve the purchaser of said mobile home as a tenant, but such permission may not be unreasonably withheld and the park shall not exact a commission or fee with respect to the price realized by the seller unless the park owner or operator has acted as agent for the mobile home owner in the sale pursuant to a written contract.

*N.J.S.A.* 2A:18–61.1 states that a landlord may not evict a tenant except for good cause. The statute sets forth those circumstances which may give rise to a "good cause" eviction. The pertinent good cause exception provides:

h. The owner seeks to retire permanently the residential building or the mobile home park from residential use or use as a mobile park.... [*N.J.S.A.* 2A:18–61.1h].

If an owner does wish to terminate use of the property as a mobile home park, the owner must give notice eighteen months in advance, or if a lease is in effect, no action may be instituted before the lease expires. *N.J.S.A.* 2A:18–61.2d. In addition, the landowner must comply with certain requirements before eviction is permitted.

If an owner seeks an eviction alleging permanent retirement of the premises from residential use pursuant to subsection h. of ... and if, pursuant to land use law, nonresidential use of the premises is not permitted as a principal permitted use or is limited to accessory, conditional or public use, a rebuttable presumption is created that the premises are not and will not be permanently retired from residential use. ... No tenant shall be evicted pursuant to subsection h ... if any State or local permit or approval required by law for the nonresidential use is not obtained.... [*N.J.S.A.* 2A:18–61.1b].

■ Plaintiff, in its initial brief on appeal, relied on two federal circuit court of appeals holdings. The first, *Hall v. City of Santa Barbara,* 833 *F.*2d 1270 (9th Cir.1987), *cert. denied,* 485 *U.S.* 940, 108 *S.Ct.* 1120, 99 *L.Ed.*2d 281 (1988), involved an ordinance which required mobile home park owners to offer leases of unlimited duration to tenants. *Id.* at 1273. Landlords could only terminate a lease for good cause, which was narrowly defined. *Ibid.* Plaintiff argued that a physical taking of its property occurred by giving tenants a perpetual lease in addition to a below-market rental rate. *Id.* at 1274.

The court of appeals in *Hall* was reviewing the district court's grant of defendant's motion to dismiss. *Ibid.* The court found

that plaintiff could prove a *physical* taking of its property. *Id.* at 1276. It held that the ordinance under review

changes the fundamental relationship between the parties, giving landlord and tenant complementary estates in the same land. On the one hand, the landlord loses forever a fundamental aspect of fee simple ownership: the right to control who will occupy his property and on what terms. On the other hand, the tenant gets an interest that he can liquidate and take with him when he leaves the property.... [*Id.* at 1279].

The second case cited in support of plaintiff's position was *Pinewood Estates of Michigan v. Barnegat Tp. Leveling Bd.*, 898 *F.*2d 347 (3d Cir.1990), in which plaintiffs asserted the identical argument as in *Hall* with reference to New Jersey statutes and a township ordinance. The ordinance set forth a formula that landlords were to use in establishing rents but did not have a vacancy decontrol provision allowing a mobile home park owner to negotiate a new rent when a tenant moved or a tenancy ended. *Id.* at 349. One statute provided that landlords could not require tenants to remove their mobile homes from the lot when the home was sold. In addition, landlords could reserve the right to approve purchasers of mobile homes, but could not withhold approval unreasonably. *N.J.S.A.* 46:8C–3a. A second statute declared that landlords could only evict tenants for statutorily defined good cause. *N.J.S.A.* 2A:18–61.1.

Similar to *Hall*, the court in *Pinewood* was considering this matter on appeal from a motion to dismiss. The court stated: "Inasmuch as this matter is before us on an appeal from an order granting a motion to dismiss, we assume that all the factual allegations in the complaint could be proven." *Pinewood, supra,* 898 *F.*2d at 350. In determining that a physical taking may have occurred, the court stated:

Here, there has been a permanent transfer of the appellants' possessory interests to each tenant to occupy a rent controlled pad. Thus, although the interest belongs to the appellants, the landlords, the effect of the law is to transfer the interest, without compensation, from the landlords to the tenants. Accordingly, a tenant may, by determining the purchaser of his mobile home, select the new tenant for the park and command a premium for the alienation of the right to occupy the pad at a controlled rent to the complete exclusion of the appellants. The combined

impact of the statute and the ordinance operates to deprive the appellants of their possessory interest in the pad permanently. [*Id.* at 353].

Although these cases supported plaintiff's position, the United State's Supreme Court in *Yee, supra,* 503 *U.S.* ——, 112 *S.Ct.* 1522, 118 *L.Ed.*2d 153, handed down while this appeal was pending, undermined the holdings in those cases. *See Richardson v. City and County of Honolulu,* 802 *F.Supp.* 326, 332 (D.Hawaii 1992). At issue in *Yee* was the combined effect of the California Mobilehome Residency Law and Escondido's municipal rent control ordinance. The California statute provided that a park owner could only terminate a tenancy for the nonpayment of rent, a violation of law or park rules, or the owner's desire to change the use of his land. *Yee, supra,* 503 *U.S.* at ——, 112 *S.Ct.* at 1526, 118 *L.Ed.*2d at 163 (citing *Cal.Civ.Code Ann.* § 798.56 (West 1982 and Supp.1991)). In addition, the park owner was unable in ordinary circumstances to require the removal of a mobile home when it was sold and could not unreasonably withhold approval of the purchaser of a mobile home. *Ibid.* (citing *Cal.Civ.Code Ann.* § 798.73, .74).

The ordinance provided for rent control of rental space in mobile home parks. Rents were set at 1986 levels and could not be increased unless the owner received permission from the city council. The council had to approve any increase in rent it determined to be "just, fair and reasonable." *Ibid.* The ordinance enumerated eleven factors the council was to consider in determining whether the increase was warranted. *Ibid.*

Petitioners owned two mobile home parks in the City of Escondido. The complaint alleged that:

The rent control law has had the effect of depriving the plaintiffs of all use and occupancy of [their] real property and granting to the tenants of mobilehomes presently in The Park, as well as the successors in interest of such tenants, the right to physically permanently occupy and use the real property of Plaintiff. [530 *U.S.* at ——, 112 *S.Ct.* at 1527, 118 *L.Ed.*2d at 164].

The petitioners relied primarily on the *Hall* case in bringing their claim. However, even in light of that decision, the California courts granted the defendant's demurrer. *Ibid.* The United

States Supreme Court granted certiorari "to resolve the conflict between the decision below and those of two of the federal Courts of Appeals," *Hall* and *Pinewood. Ibid.*

In determining whether a physical taking occurred, the Supreme Court noted that a physical taking, as opposed to a regulatory taking, exists only where the government "*requires* the landowner to submit to the physical occupation of his land." 530 *U.S.* at ——, 112 *S.Ct.* at 1528, 118 *L.Ed.*2d at 165. After examining the ordinance in conjunction with the statute, the Court found that no physical taking had occurred. The Court stated:

> Petitioners voluntarily rented their land to mobile home owners. At least on the face of the regulatory scheme, neither the City nor the State compels petitioners, once they have rented their property to tenants, to continue doing so. To the contrary, the Mobilehome Residency Law provides that a park owner who wishes to change the use of his land may evict his tenants, albeit with six or twelve months notice. *Cal.Civ.Code Ann.* § 798.56(g). Put bluntly, no government has required any physical invasion of petitioners' property. Petitioners' tenants were invited by petitioners, not forced upon them by the government. [*Ibid.*].

The Court noted that it has consistently allowed states to regulate housing conditions, particularly landlord-tenant relationships, without requiring payment of compensation for resulting economic consequences. 530 *U.S.* at ——, 112 *S.Ct.* at 1529, 118 *L.Ed.*2d at 166. Although the petitioners argued that the ordinance transferred wealth only to the "incumbent mobile home owner," the Court held that this had no bearing on a physical takings issue because the ordinance "does not require petitioners to submit to the physical occupation of their land." 530 *U.S.* at ——, 112 *S.Ct.* at 1529–30, 118 *L.Ed.*2d at 167.

The Supreme Court adequately answered the plaintiff's main argument in the present case as follows:

> Petitioners emphasize that the ordinance transfers wealth from park owners to incumbent mobile home owners. Other forms of land use regulation, however, can also be said to transfer wealth from the one who is regulated to another. Ordinary rent control often transfers wealth from landlords to tenants by reducing the landlords' income and the tenants' monthly payments, although it does not cause a one-time transfer of value as occurs with mobile homes. Traditional zoning regulations can transfer wealth from those whose activities are prohibited to their neighbors; when a property owner is barred from mining coal on his land, for example, the value of his property may decline but the value of his neighbor's

property may rise. The mobile home owner's ability to sell the mobile home at a premium may make this wealth transfer more *visible* than in the ordinary case, see Epstein, Rent Control and the Theory of Efficient Regulation, 54 Brooklyn L.Rev. 741, 758–759 (1988), but the existence of the transfer in itself does not convert regulation into physical invasion. [530 *U.S.* at ——, 112 *S.Ct.* at 1529, 118 *L.Ed.*2d at 166].

Thus, the holdings in *Hall* and *Pinewood* are no longer persuasive in light of the Supreme Court's determination that no physical taking occurs in these circumstances. *Yee* effectively disposed of plaintiff's argument as asserted in its initial brief.

■ Plaintiff, nonetheless, argues in its reply brief that "the concept of a 'taking' claim can encompass numerous issues, and certainly there is a 'taking' argument which survives after the Supreme Court's decision in *Yee*." Plaintiff reasons that because the ordinance and the statutes here effectively require the land-lord to continue the use of its property as a mobile home park, *Yee* is not dispositive. Plaintiff urges:

New Jersey's tenancy scheme prohibits eviction unless the landlord can obtain all zoning approvals for an alternate commercial use. Once the mobile home park is zoned for mobile home park use only, as here, then the landlord cannot get the alternate commercial use development approvals, and therefore, cannot close his mobile home park. Under those circumstances, the zoning ordinance is the instrument which coerces the landlord to continue use of his land by the third parties in question. That creates the missing piece of a puzzle which was fatal to the landlord's claim in *Yee*. That missing piece being extant here, this Court must conclude that a taking has occurred as a result of the municipal regulations and/or remand for consideration of the zoning ordinance and its impact on the landlord's rights to possession of his own land.

Petitioners in *Yee* also asserted that the existing California statutes were a "kind of gauntlet" which effectively precluded them from changing the use of their land. 530 *U.S.* at ——, 112 *S.Ct.* at 1528, 118 *L.Ed.*2d at 165. The Supreme Court refused to consider this aspect of petitioners' argument because they did not attempt to change the use of their land. *Ibid.* The Court only examined the face of the statute, but noted that:

A different case would be presented were the statute, on its face or as applied, to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy. [530 *U.S.* at ——, 112 *S.Ct.* at 1529, 118 *L.Ed.*2d at 166].

The Supreme Court in *Yee* noted at the beginning of its opinion:

[W]here the government merely regulates the use of property, compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole. *See, e.g., Penn Central Transp. Co. v. New York City,* 438 *U.S.* 104, 123–125, 57 *L.Ed.*2d 631, 98 *S.Ct.* 2646 (1978). ... [This] necessarily entails complex factual assessments of the purposes and economic effects of government actions. [530 *U.S.* at ——, 112 *S.Ct.* at 1526, 118 *L.Ed.*2d at 162].

We decline to consider the merits of plaintiff's argument. Plaintiff has not demonstrated any attempt to change the use of its land. *See N.J.S.A.* 40:55D–70d. We conclude that it would be wholly speculative to determine whether the untested circumstances require plaintiff to perpetually use its property as a mobile home park. Even though plaintiff might have difficulty changing the use of its property, the statutes and ordinance do not on their face preclude plaintiff from discontinuing use of the land as a mobile home park.

■ Plaintiff further claims that no rational nexus exists between the stated rent control goals of the Ordinance and the means used to achieve these goals; thus, a due process violation resulted. However, no due process analysis exists in the record. The hearings conducted before the Board only focused on the vacancy decontrol provision. Therefore, although we perceive that a rational nexus clearly exists, we will not decide this due process issue in light of the fact that no record has been created. *Murin v. Frapaul Constr. Co.,* 240 *N.J.Super.* 600, 613, 573 *A.*2d 989 (App.Div.1990); *Matter of Kovalsky,* 195 *N.J.Super.* 91, 99, 477 *A.*2d 1295 (App.Div.1984).

Plaintiff's assertion that it is entitled to an award of attorney fees under 42 *U.S.C.* § 1988 because defendants have violated its civil rights through a physical taking of its property without just compensation is not viable as plaintiff has failed to prevail in this action. *Cf. Gregg v. Township Committee of the Tp. of Hazlet,* 232 *N.J.Super.* 34, 556 *A.*2d 348 (App.Div.1989).

Affirmed.